Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 The bill was demurred to, and the demurrer sustained below, and the facts appear only on the face of the bill. Davis held the legal title to the two lots (Nos. 7 and. 8) in dispute, lying in or near the city of Milwaukee, in the State of Wisconsin. Davis held the legal title as trustée for Otis Hubbard. In June, 1851, Hubbard, for a good and valuable consideration, conveyed the premises to Joachim Gruenhagin, by a deed in fee, by which the grantee became seized of the entire interest of Hubbard.
 
 *242
 
 In December, 1852, Gruenhagin, for a good and valid consideration, conveyed the premises to James S. Brown; and in January, 1858, Brown, for a valuable consideration, conveyed to the complainant, Smith. The complainant afterwards also got deeds from Davis and Knab.
 

 Hubbard had sold two other lots in Milwaukee to one Schram, the title to which was outstanding in the names of persons residing beyond the State of 'Wisconsin. Schram required security for the title from Hubbard.
 

 Butler, a relation of Hubbard, got Knab to give a bond for title, binding himself jointly with Butler, as security to Schram.
 

 To secure himself against loss for his undertaking to Schram, Knab required of Hubbard security to indemnify him, should Hubbard be unable to make a title to the lots sold to Schram; and Hubbard got Davis, who held the legal title to the lots, to convey them to Knab as security, and for no other consideration.
 

 On the same day (22d of July, 1848) that the title bond to Schram was made, Knab executed to Butler a bond covenanting that if Butler would procure the deed from the trustees of Hubbard, and comply with the bond to Schram, he (Knab) would convey the lots to Butler, for which he held Davis’s deed; Butler failed to procure the deed, and Hubbard did so himself.
 

 In March, 1851, Butler assigned Knab’s bond to Orton, the respondent.
 

 Hubbard never received any consideration whatever for the lots thus transferred; and it is alleged that the bond from Knab to Butler was a secret and fraudulent contrivance on the part of Butler, to cheat Hubbard and obtain his property, and that he was defrauded thereby.
 

 Smith .obtained a deed for the lots from Davis, and also one from.Knab; but as Davis had no interest, having long previously conveyed to Knab, nothing passed by his deed, unless, as is assumed by the bill, an equity of i-edemption resulted to Davis.
 

 And, as Orton had filed.a bill in a State court against Knab,
 
 *243
 
 which was pending when Smith took his deed from Knab, and as Knab was not allowed to disavow his own bond, Orton got a decree against Knab for a conveyance of the legal title,’ (whicl conveyance was regularly made,) and therefore the deed from Knab to Smith was of no value. Having been' made whilst the suit was pending, it could only have any useful effect on the contingency of Knab’s successful defence.
 

 Orton having succeeded, his decree related to the commencement of the suit, and gave him the elder.and better legal title, Smith’s deed being “ subservient to the rights of the parties in litigation.” (1 Story’s Com. Eq., S. 406.)
 

 Orton has the legal title, beyond dispute. Smith is asserting Hubbard’s equity and Davis’s right of redemption; and prays by his bill, among other things, “that Orton be decreed to release to him (Smith) all claim or interest in said lots.”
 

 Neither party has, or ever had, actual possession of the premises; nor is this of any consequence, as the contest is for the legal title.
 

 Butler certainly had neither a legal nor equitable interest in the property when he sold to Orton. He held Knab’s title bond, with full knowledge that Knab held as trustee for Hubbard. And this bond was assigned to Orton, who, according to the allegations of the bill, took it with Hubbard’s equity inhering to it.
 

 What effect Orton’s decree against Knab may have to protect Orton under the legal title, on a plea of
 
 bona fide
 
 purchaser of an equity, we decline to decide; nor will we discuss the question, as this cause may again come before this court, and involve that question.
 

 The remaining question for consideration- is, whether Smith can be heard in a court of equity, being an assignee of an equitable interest in contestation.
 

 Gruenhagin purchased and took a deed for Hubbard’s equity, and was clothed with his interest before any litigation was instituted affecting the title. And as neither Gruenhagin, Brown, nor Smith, were parties to the suit of Orton against Knab, the decree against Knab did not in any wise impair,the equity obtained from Hubbard, who likewise was no party to
 
 *244
 
 that suit, and who had conveyed to Gruenhagin before it was . commenced.
 

 Hubbard’s equitable title being distinct from the legal title in controversy between Orton and Knab, no reason existed why it should not be the subject of .a
 
 bona fide
 
 sale, and transfer by deed, in like manner that a mortgagor’s equity may be sold and conveyed. After a mortgage debt is discharged, the mortgagor or his assignee may compel the mortgagee or his assignee to surrender the legal title. And that is substantially the case the bill makes; for after Hubbard satisfied Scbram’s bond made for title by Enab and Butler, Enab held the naked legal title, with an undoubted right in Hubbard to call for its surrender. And his assignee stands on the same footing. (4 Kent’s Com., 157.) And so the statutes of Wisconsin in effect provide. (Revised Statutes of 1849, ch. 59, sec. 7; ch. 77, secs. 6 and 7.)
 

 We are of the opinion that the court below erred in sustaining the demurrer to the bill, and order the decree to be reversed, and remand the cause, with directions that the District Court proceed in it according to the 34th rule of this court, governing chancery proceedings.