Robertson, J.
As this case comes before us on an appeal from a decision of a single judge at special term, questions of fact as well as of law are before us for review, on the evidence appearing upon the trial. (Code, § 268.) The plaintiff in it, who is receiver of the property of the defendant George Murphy, as a judgment debtor, seeks to set aside certain voluntary conveyances by such debtor to two of his children, the defendants Edward and Ann Maria Murphy. The judgment on which the plaintiff was appointed receiver, was for a debt incurred after such conveyances were executed. Certain facts found by the judge, ■ by whom the cause was tried, were specified in his decision.
The defendants’ counsel excepted to the finding by the court of the following facts, viz.: That the property included in the conveyances in question constituted, at the time of their execution, all the property of the judgment debtor. That the only consideration for each of such conveyances was one dollar. That he was in debt Avhen they were executed. That there was no actual, permanent and visible change of possession of the property conveyed. That such conveyances were made with a vieAv to a continued and future indebtedness in his business, and with the intention of avoiding payment thereof, and that they were made with the intent to hinder, delay and defraud creditors, and in particular those on whose claims such judgments were recovered, of their claims.
As to the property conveyed being all the property of the judgment debtor, the complaint charges and the answer does not deny it, and the evidence only establishes that all the other property he at any time had was cattle, bought weekly on credit, to be paid for in a week after it *80 was bought. The question of consideration is immaterial, although the conveyances speak for themselves; only nominal considerations are mentioned in them, and natural affection was insufficient to sustain them against creditors. The indebtedness of Murphy to Carey, one of the witnesses at the time of executing such conveyances, of nearly $1,400, was fully proved by the uncontradicted evidence of the latter.
There is, however, it is true, some proof of change of possession of the triangular piece of land used for a yard to the dwelling-house of Murphy and an alley to his slaughter-house, and containing a hide shed; also of the premises on the opposite side of the way; and if the case turned upon such want of possession alone, or the conveyances of such parts stood alone, they might escape any claim of the plaintiff. But as the finding upon such possession is not indispensable to the judgment, and the decision is not made to rest on it, it may be laid out of view in disposing of the case.
There was sufficient evidence that the conveyances controverted contemplated a future continued indebtedness by the grantor in his business, and an intent to avoid its payment. He was in debt when he executed them, conducted his business afterwards entirely on credit, remaining all the time largely indebted to different creditors, and finally succumbed under a load of debt. The conveyances to his wife, son and daughter, were made suddenly and without communication with them. The only pretense for conveying to his son was to reclaim him from the vice of intoxication; a strange remedy, whose first application was not able to effect his cure. He conveyed to his minor daughter the house in which he lived, to prevent her from being dissatisfied with the conveyance to his son; for the conveyance to his wife he furnished no explanation. The first conveyance to his son not having effected his cure, he executed a second six months after-wards, of another piece of property, which completed it. There was no time from thenceforwards when the judg *81 ment debtor was free from debt. At the time of his failure it had increased to $3,800, and there is no evidence that he then had any assets left. These facts alone are sufficient, were there no others to warrant the conclusion that the judgment debtor executed the conveyances to deprive future creditors of the means which he then had to pay them, intending to carry on a speculative trade, and leave them at the mercy of his future failure. Ho confessions of the judgment debtor, at any time under such circumstances, would be necessary to complete proof of his intent to defraud his creditors by such conveyances.
One exception to the findings of the judge at special term was, his omission to find that the assertions of Murphy, the debtor, made after the conveyances, are no evidence of a previous intention on his part to defraud his creditors, and that such subsequent assertions could not and did not affect the validity of the prior conveyances. The decision is silent as to any effect of such assertions. There is no evidence in the case that the defendant claimed any such principle on the trial, or that the attention of the court was drawn to it by their counsel. Hor is there any evidence in the record that the judge did not adopt it, unless an opinion delivered by him can be invoked to prove it. It would seem rather anomalous to complain of a failure to decide what had not been required to be decided.
The Code does not admit of exceptions to opinions; as they have been held not to affect decisions, (Titus v. Orvis, 16 N. Y. R., 617), they certainly ought not to be employed to overturn them; where no other mode of arriving at the decision is pointed out, they may act as guides in exhibiting an error; they never have the formal exactness of a judgment or decision, and should not be held to the same strictness. In this case, the clause in the opinion cited to show an error in the reasoning of the court, or the rules adopted by it, is fully susceptible, without straining, of such an interpretation as allows the evidence to have been considered in a proper light.
*82 On the trial, the testimony of Endlong, a witness for the plaintiff, was given, to the effect that after the conveyances by Murphy, the latter said he had made them because he was afraid of losing his property, and wanted to save it for his family. This does not seem to be a very dangerous admission, as it is fair to assume that a similar motive must actuate every person in making a settlement; but its office was expressly confined on the trial to* the impeachment of Murphy, who had sworn to innocent or different motives in executing the conveyances. In the opinion now under examination, the learned judge observes : “ The defendant swears he did not intend to defraud his creditors, but to retrieve his son. One witness swears that he expressly declared he was apprehensive of losses, and meant to keep the property for his family. It is his intent, proven by his declarations and acts, which is to govern the case.” There can be no doubt of every proposition contained in this observation; yet this is claimed to be a statement that the court admitted Murphy’s admissions, not merely to contradict his testimony, but to make out, primarily, fraud in his transfers of property. But it only needs the insertion of a few words supplying the ellipsis in the reasoning, to make it a logical answer to deductions of fairness drawn from Murphy’s testimony. It is, substantially, that the defendant had testified to one motive; another witness testified that he admitted a different one; he must be judged by his intent, as proven by his declarations and acts, not by his oath as to that intent.
But I see no reason why, even if the opinion could be construed otherwise, a mistake in the application of testimony to facts, by a judge anymore than by a jury, should render the decision void. It is true, we assume that the course of reasoning in opinions must be such as is there manifested. In the case of a jury, no affidavits would be received to prove such a mistake. If it could be inferred from an opinion, it might equally well be so from the oral statements of the judge before whom a cause is tried; and *83 if such is the right of a party, he might subject the judge to a cross-examination to ascertain defects in the reasoning. If this be so, the litigation would terminate sooner if no opinion were delivered, or the law prohibited its delivery. A party with a perfectly good case, sustained by overwhelming evidence, with not an error in law committed on the trial, may be compelled to incur the expense and delay of a new trial, merely because the presiding judge may have applied some evidence to some fact to which it was not applicable, without any previous warning by counsel, although if done by a jury it would have been irrevocable.
I have not deemed it necessary to discuss the question whether the admission of a person in possession of property can affect the title of a claimant, as it is not essential; but I think the evidence, without such admission, such that the finding by the learned judge of an intent to defraud ought not to be overturned.
There are no other questions which need to be noticed.
The judgment should be affirmed, with costs.
Hoffman, J.
The first point for consideration arises on the following facts and rulings of the court:
Murphy, the grantor in the conveyances alleged to have been fraudulently made, was examined as a witness to sustain them. He was asked, on cross-examination, whether he had not made certain statements to a person designated, at a particular time, of his reasons for making the deeds, being to put the property beyond the reach of the law. An objection was taken and overruled, and no exception taken. If there had been, the question was proper in order to lay the foundation for impeaching the credit of the witness.
At a subsequent stage of the case, one Budlong was called by the plaintiff, and asked “ with a view of impeaching Murphy’s evidence,” if Murphy had not made to him the declaration alleged. An objection was taken, on the ground that Murphy’s attention had not been called to the *84 point with sufficient particularity. This objection was overruled, and an exception taken. The witness answered that such declarations were made. On a cross-examination he qualified his testimony considerably, yet leaving the declarations of the grantor of some weight upon the subject. The grantor was recalled and examined as to the declarations.
Thus far, and as the case is made up, the rulings were undoubtedly right. The testimony was admissible in the view for which it was proffered, of throwing discredit on Murphy’s evidence.
The findings of facts set forth in the case are, if established by the evidence, sufficient to sustain the conclusion of law that the conveyances were fraudulent and void as against the judgment creditors mentioned in the complaint. I The judge finds, as a fact, that they were made with a I view to a future and continued indebtedness in business, And with the intention of avoiding payment thereof. There is, at least, not enough to warrant us in setting aside this conclusion. This point is afterwards examined.
Thus, on the case, the evidence in the case, the rulings and exceptions, and in the findings, there is no ground for reversal or modification.
But in the opinion, the judge adverts to Murphy’s and Budlong’s testimony thus: “The defendant swears that he did not intend to defraud his creditors. One witness swears that he expressly declared that he was apprehensive of losses, and meant to keep the property for his .family. It is his intent, proven by declarations and acts, which is tó govern the case.”
I concur with Mr. Justice Robertson that the Appellate Court cannot reverse a decision which appears, on facts proven by competent evidence, set forth in the proper record, to be correct, on the ground of something stated .in the opinion, even if it shows that the judge was treating improper evidence as competent. I agree to this after some hesitation, because the appeal is from my own judgment, and the view.of counsel did at first strike me to *85 possess great force. But the solution of the difficulty is this, that the Appellate Oourt is to pass upon the case as it stands, irrespective of the judge’s conclusion, views or reasoning, except to regard them as presumptively right, and to pay them ordinary respect. The inquiry for such a court is, what is the legal deduction from the facts shown by legal testimony ?
This view is on' the assumption that the declarations of Murphy, the grantor, subsequent to the conveyances, were not competent evidence in chief. That point is at. least not clear.
The learned editors of Phillips on Evidence, Cowen and Hill, (vol. 3, p. 1297, Edw. ed.,) say: “A majority of the cases are peculiarly clear and strong, that declarations of a debtor who continues in possession of property after a sale or transfer by him in any way to another, showing fraud in the transfer, are evidence against the vendee or transferree, in a contest between him and the creditors. In one case it was denied that such declarations could be used in this way, unless possession is shown to have been with the consent or permission of the vendee. (Talcott v. Wilcox, 9 Conn. R., 134.) But in that case, the possession of the vendee, at the time of the declaration, was put in doubt by the evidence, and the court consider the jury as having found against it.” The possession is considered as adequate evidence of a conspiracy between the vendor and vendee to defraud the creditors, and the admissions of the debtor are let in as those of a co-conspirator. In Louisiana, the declarations of the debtor are always received, to show fraud, as far as he is concerned, although it is admitted that, unless he be in possession, his vendee cannot be affected. Again they say, “That to bring himself within the last clause of this rule, ” (viz., that declarations are not evidence,) the vendee, donee or assignee must see that the sale or assignment is consummated, and plainly so, by delivery of possession. Strong as this language is, the cases cited are hardly sufficient to support it; and a reference to some leading authorities is necessary.
*86 To the general proposition as to the inadmissibility of subsequent declarations, I need only cite the language of Chief Justice Spencer, in Phoenix v. Dey et al., (5 Johns., 412, 426,) and the case of Sweetland v. Webber, (1 Adol. & Ellis, 733.) “ The declarations of a party to a sale or transfer, going to destroy or take away the vested rights of another, cannot, ex post facto, work that consequence, nor be regarded as evidence against the vendee or assignee.” “It is clear that a person who has parted with his interest in property is not to divest the right of another claiming under him, by any statement which he may choose to make.”
In Sprague v. Kneeland, (12 Wend., 161,) we have the rule very clearly announced, “ that the declarations of a former owner of personal property cannot be given in evidence to affect the title of a succeeding owner, where such declarations were made after he had parted with his interest in the chattel.” (Hurd v. West, 7 Cow., 752, 8 Wend., 490, are cited.)
In Christie v. Bishop, (1 Barb. Ch. R., 105,) Chancellor Walworth held, in a very careful opinion, where the question was usury in a judgment assigned to one of the defendants, first, that the answer of a co-defendant admitting it, could not be admitted in proof, being filed after the assignment; next, that it would have been so if made before the assignment; and lastly, recognizing the general rule, that a party who has parted with his right or interest in property, or a chose in action, by an absolute sale and assignment, cannot, by subsequent admissions, affect the right of the purchaser.
It is undeniable that the rule which admits declarations made by the owner while in possession of personal property, against Ms assignee, has undergone in our State much modification.
Beach v.Wise, (l Hill, 612,) was the case of declarations by the payee of a promissory note, while he held it, offered to affect the right of Ms transferree. They were rejected; Mr. Justice Bronson-, after referring to the elaborate note of *87 Cowen & Hill upon the subject, (644-668), saying: As an original question, I should be unable to see any solid distinction between cases relating to real property, where the declarations of the former owner are constantly admitted, and those relating to dioses in action and other personal property, where, as we have seen, such declarations have been rejected. But the decisions as to personal property are the other way. Hurd v. West, (7 Cow., 752,) as to personal property generally, is referred to. Chancellor Walworth, in Christie v. Bishop, before cited, agrees with Justice Brohsoh’s views. In Stark v. Boswell, (6 Hill, 405,) declarations of a mortgagee of lands, before it was due, and before the acquisition of title by the defendant under him, were rejected as to the fact of usury in the mortgage.
And in Paige v. Cagwin, (7 Hill, 361,) the Court of Errors held that declarations by the payee of a negotiable promissory note, made during his possession of it, were not to be received as against one to whom he subsequently transferred it for value, though the transfer was after its maturity. Hr. Senator Lott adverts to Justice Brorsos’s rule in regard to real estate, and observes: “ There would, in my judgment, be much more propriety in excluding such declarations as to real estate than in admitting them as to personal property. But I do not concede that such declarations are now admissible to affect the title to lands, although they may be admitted to explain the character of a possession.” He cites Jackson v. Shearman, (6 John., 19.) In Tousley v. Barry, (16 N. Y., 497,) “the case,” says the learned judge, “ is brought to the question, whether the admission of a previous owner of a chose in action can be proved against á purchaser from him, who has bought for a fair consideration, and between whom and the former owner there exists no other relation than that of purchaser and seller. It is not the case of a nominal purchase, the former owner retaining the equitable interest, but of an actual and complete transfer of all interest to the purchaser. On that question Paige v. Cagwin, (7 Hill, 361,) is a full *88 authority.” “In Booth v. Swezy, (4 Seld., 276,) the point was again raised, and this court held the admissions of the mortgagee inadmissible against his assignee.” The declarations here were those of a mortgagee, while he held the security, as to usury in it.
To these cases may be added Ogden v. Peters, (15 Barb., 560,) Woodruff v. Cook, (25 Barb., 505,) and Brown v. Mailler, (2 Kern., 118.)
Thus, it must be treated as thoroughly settled law with us, that in all cases of personal property, the declarations of an owner, even while in possession, cannot be received against a subsequent transferree of his interest for value. Probably they are inadmissible in every such case, except where a privity or identity of interest exists; and such privity does exist (as in the case of an administrator) where the new party cannot be in a different position from the former owner; and such identity only prevails (as in cases mentioned by Williams, J., in Fitch v. Chapman, 10 Conn. R., 8,) “ where the nominal party was suing in fact for the benefit of a third person.”
On the other side, it is settled in the Court of Appeals that there is a case in which declarations after a transfer may be received and affect its validity. In Adams v. Davidson, (10 N. Y. R.,) the question was as to Baud in an assignment. The court say: “ The evidence fails to satisfy me that there was a delivery of any kind in good faith. It clearly establishes that there was not an actual, much less a continued, change of possession of the assigned property. Brown and his clerk were in the open, actual possession of the property, the latter acting under the direction of the former.” There was a declaration of the assignor given in evidence, showing that one object was to coerce certain persons to become his security, in which, case the assignment was to be void. The court say: “ This declaration of Marvin, although objected to, was competent evidence, he having remained in possession of the goods up to and after the time the declaration was made. (Willis v. Farley, 3 Carr. & Payne, 395.)
*89 In that case, upon &fi. fa. against B., certain goods were taken, and a bill of sale executed by the sheriff to the plaintiff. B. remained in possession, and the sheriff retook them upon another execution against him. In an action by the plaintiff against the sheriff, B.’s declarations, showing that the first execution was colorable, were admitted in evidence.
In Bridge v. Eggleston, (14 Mass. R., 245,) the tenant claimed under a deed from one Goodwin. The demandant undertook to prove that- it was made to defraud creditors. The confessions of the grantor as to his insolvency or embarrassment, made before the conveyance, were held admissible upon the point of fraud. Though the grantor was a competent witness, the creditor was not bound to rely upon his evidence. His conduct, acts and declarations, before the deed, were good evidence. This would not affect a bona fide purchaser for valuable consideration, without notice. Thus establishing fraud in the grantee, it would avail against a grantee who paid no consideration, or acted inconsistently with the bona fide ownership of the property. But the declarations, conversations or actions of a grantor, after making his deed, ought not to be received in prejudice of the title he has created, because he is interested to have such title defeated by his creditors, and because he can be examined on oath, if a competent witness. His conversation afterwards is mere hearsay.
In Hansell v. Bryan, (19 Georg. R., 167,) declarations of a father, continuing in possession, as to an alleged gift of property to his son, were admitted, both to. support and invalidate the claim.
Wilbur v. Strickland, (1 Rawle, 458,) and Reittenbach v. Reittenbach, (Ibid., 362,) are cases in which subsequent declarations as to fraud in the instrument were allowed. In each of them the independent previous proof of a fraudulent intent from continued possession and acts of ownership was strong.
Now, if the admissibility of the declarations depends upon the extent to which the proof of a fraudulent intent *90 has already gone, the rule becomes one of great uncertainty and vagueness, and the remarks of the eminent editors of Phillips become very pertinent. The case may have gone so far upon other testimony as wholly to dispense with the necessity of the admissions—to render them needless. I confess I cannot see any definite or logical rule but to admit them at any stage of the cause, after possession is proven, or to reject them entirely. In Adams v. Davidson, it seems clear that the proof was decisive without the declarations, and they were superfluous; but it was not error to admit them.
In this situation of the authorities, it is by no means certain that subsequent declarations of a grantor of real estate, made while in proven possession, as to the character and intent of the deeds, are wholly inadmissible.
There is another consideration. The grantor is a competent witness to support the conveyance. He has been examined. He could have been asked as to the honesty of his intentions; his undisclosed views in making it. He has sustained the fairness of his intention and his acts. TTis declarations have been received, the witness proving them cross-examined, and then the grantor recalled to repel or explain them away. There is much less objection to the reception of such declarations as evidence in chief under such circumstances than when they are proffered alone. My impression is, that there would not be error in allowing the evidence, even if the point was distinctly raised in the case.
This brings me to the question upon its merits; and that involves the vexed inquiry of the rights of subsequent creditors to impeach a voluntary conveyance as fraudulent. The plaintiff represents a judgment creditor of the grantor, who became a creditor by simple contract, after the- conveyances.
Has a subsequent creditor any such right; if so, under what circumstances may he exercise it; what rules are applicable; what will entitle him to a judgment ? I have had occasion to examine at much length, the doctrine of *91 fraud at the common law, and to trace the cases in the Abridgements of Fitzherbert and Brooke, tho.se epitomes of the Year Books, and through the ancient Beporters before the statute of 13th Elizabeth. Two points I think can very clearly be made out :
First. As it is declared by Yelvebtcx, J., in Upton v. Basset, (Cro. Eliz., 445,) at the common law there was not any fraud remedied which should defeat an after purchase, but that only which was committed to defraud a former interest, quod fait concessum per curiam, and the same rule is expressly stated in Twyne’s Case. (3 Coke’s R., 83 b.) At a very ancient period it was held that the rule was not so strict as to require proof of an intent to defraud a designated and particular person; but there might be a general intent to defraud a class of persons.
Thus, so early as the 13 Henry IV, (Year Book, 4 Mich., Pl., 9,) in a writ of debt brought against two executors of J. B., who said that J. B., in his lifetime, gave all his goods to them by a deed which they produced; without that they had administration of any other goods: it was replied, this gift was made by fraud and collusion, to oust us and others to whom he was indebted, of our actions. Horton, for the defendants, answered that the gift was tona fide; et sic ad patriam.
Bolle cites this case to the position, that if a man make a gift of his goods by covin to oust his creditors of their debts, they may, after his death, bring an action against the vendee for them. (1 Rolle’s Abr., 549 ; tit. Covin, 3.)
Second. By the common law, covin was a fact to be found by a jury. The covin was to be returned by the inquest; the jury were to find the covin. “ Upon covin found,” is the language used; and thus Chief Justice Lee, in Ryall v. Rolle, (1 Atk., 177,) a case of creditors, says: “At common law it was left to the jury to consider whether eonvejmnces of this sort were fraudulent against creditors or not.” The statute of 13 Elizabeth, chapter 5, was “for the avoiding and abolishing of feigned covinous *92 and fraudulent feoffments, gifts, grants, &c., as well of lands and tenements as of goods and chattels, more commonly used and practised in these days, than hath been seen or heard of heretofore; which feoffments, grants, gifts, &c., have been and are devised and contrived of malice, fraud, covin, collusion or guile to the end, purpose or intent to delay, hinder and defraud creditors and others, of their just and lawful actions, debts, &c.,” and then declares and enacts that every feoffment, gift, grant, &c., had or made to or for any intent or purpose before declared and expressed, shall be deemed and taken, (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns, whose actions, suits, debts, accounts, damages, &c., by such guileful, fraudulent or covinous devices and practices, as is aforesaid, are, shall or might be in any ways disturbed, hindered, delayed or defrauded,) to be clearly and utterly void, frustrate, and of none effect; any pretense, color, feigned consideration, or expression of use, or any other matter or thing to the contrary notwithstanding. In the early re-enactment of this statute in our State, (1 R. L., 75,) the nature of fraudulent conveyances is described in the same language. In the Revised Statutes, though the language is more refined, the meaning is the same. Fraudulent conveyances are such as are made with the intent to hinder, delay and defraud creditors or other persons of their 'lawful suits, &c., (2 R. L., 137, § 1.) It is also declared (§ 4) that the question of fraudulent intent shall be a question of fact and not of law, and that no conveyance shall be adjudged fraudulent as to creditors, solely on the ground that it was not founded on valuable consideration. (Per Denio, J., in Seymour v. Wilson, 14 N. Y. R., 567.)
A few cases immediately after the act of Elizabeth may be usefully noticed. A cotemporaneous exposition by courts of justice is the best interpreter of a statute.
In Bethel v. Stanhope, (Cro. Eliz., 810 ; 43 Eliz., 1601,) it was found by special verdict, that the testator was possessed of certain goods, and by covin to defraud his credi *93 tors, made a gift of them to his daughter, with a condition that upon payment of twenty shillings it. should be void. The case came up on a scire-facias to an executor, upon a judgment against the testator. The gift was held utterly void against the creditors, by 13th of Elizabeth.
In Humberton v. Howgil, (Hob. R., 72, 12 Jac. 1, 1610,) the feoffment was avoided upon the finding of a jury that it was made by covin to defraud the plaintiff and other creditors.
The earliest case I have found after the statute is Stoke’s case, 3 Leon. R., 5 ; 16 Eliz., 1573.) A. made B. his executor, and died. B., with the intent to defraud the creditors, refused the executorship. Administration was granted to a stranger, who fraudulently gave the goods to B. (Per Dyer.) If the gift be fraudulent, then, by the statute 13th of Elizabeth, the gift is void, and B., by the occupation of the goods, shall be charged as executor of his own wrong; and according to his opinion, judgment was given.
These cases are sufficient to show that, soon after the statute, the general intent to defraud creditors at large, was sufficient to entitle all who should put themselves in a situation to impeach a fraudulent gift, to do so. But in these, and in all the numerous cases, I have found, for a considerable period, the creditors were such at the time of the gift or grant.
The earliest authority I have met with, in which subsequent creditors were distinctly permitted to question a fraudulent conveyance, is that of Naylor v. Baldwin, (1 Ch. R., 130, 15 Car., 1, 1639.) The statute of Elizabeth was in 1570. The voluntary conveyance for wife and children was in July, 1630. The debt to the plaintiff was incurred in August, 1631. In the same year the grantor became indebted to the two other plaintiffs. These debts were sued to judgment. Baldwin, the settler, had, as I think it appears from the case, made a lease of the lands, for £40 consideration, for forty-one years, at forty shillings rent. The conveyance was set aside.
*94 In Hungerford v. Earle, (2 Vern., 261, 1692,) a father made a voluntary settlement to raise portions for his younger children. The plaintiffs were bond creditors for money, but thirteen years afterwards, Hutchins, one of the commissioners of the great seal, stated the law thus: “This settlement not pursued, for the trustees did not enter and take possession according to the deed, but permitted the father to live in the house, ” &c. And a deed not at first fraudulent, may become so afterwards, by being concealed, or not pursued, by which means creditors are drawn in to lend their money. The other two commissioners doubting, it was sent to be tried at law.
The case of St. Amand v. The Countess Dowager of Jersey, (Comyn’s R., 255, 1716,) in conjunction with Lord Rosslyn’s doctrine, in Montague v. Earl of Sandwich, (5 Ves., 386,) settles, that when a bill is brought by bond creditors to set aside conveyances in administering assets, subsequent creditors are let in to a share, if not because it was actually void as to them, yet upon the principle of marshaling the assets so as to place the subsequent creditors in the place of the former, as to such property.
Lord Talbot says, (Jones v. Marsh, cases Temp. Talbot, 64, 1734,) “How far this court will set aside a family settlement, without any consideration, as fraudulent, against a creditor who lends his money, thirteen years after the settlement, I do not say. I need not at present determine that point.”
The decisions of Lord Hardwicks, so far as it is necessary to advert to them in the present case, involve, I think, these propositions:
If the grantor remain in possession, or reserve, (as by an annuity,) an interest of such value as to be equivalent to possession, the conveyance cannot stand.
If the settlement is impeached as simply voluntary, proof of indebtedness at the time must be made. If creditors then existing assail it, subsequent creditors may equally reach the property transferred.
*95 A man, though not indebted at the time, may make a voluntary settlement, with a view to his being indebted at a future time, and that will be void. (Russell v. Hammond, 1 Atk., 13 ; Walker v. Burrows, 1 Atk., 93 ; Stileman v. Ashdown, 2 Atk., 477 ; Stiles v. The Attorney General, 2 Atk., 152 ; Middlecome v. Marlow, 2 Atk., 519 ; Taylor v. Jones, 2 Atk., 600.) This last case was by the Master of the Bolls.
Lord Kenyon, in Stevens v. Olive, (2 Brown’s Ch. R., 91, 1786,) held that a settlement after marriage in favor of a wife and children, made May, 1774, was good against a bond creditor of March, 1775. The settler was only indebted in a sum of £500, secured by mortgage, at the time of the settlement. The settler took an estate for life. Lush v. Wilkinson, (5 Ves., 384,) is a clear case upon the facts. The settler appeared to have been only indebted in two mortgages, and not over £100 beyond them. The allegation in the bill of insolvency was not proven. An account was denied. Lord Kbyyoy indeed said: You have come without proving one antecedent debt, (unsecured.) A single debt will not do; it must depend upon whether he was in insolvent circumstances at the time.
In Kidney v. Coussmaker, (12 Ves., 148,) Sir Samuel Bomilly put the case of a settler indebted, but which debts were paid by moneys borrowed of the plaintiffs. He thought the court would have great difficulty in deciding that such a settlement was not a fraud. The Master of the Bolls said: “Though there has been much controversy, and a variety of opinion, upon the question whether such a settlement (one after marriage) is fraudulent as to any creditors, except such as were creditors at the time, I am disposed to follow the latest decision, that of Montague v. Lord Sandwich, which is, that the settlement is only fraudulent as against such creditors as were creditors at the time. Hotking appeared on the case as to debts, except the allegation of the answer that the settler was only indebted in his common course of business as a trader.
*96 Lord Eldon, in George v. Milbank, (9 Ves., 190,) speaking of the case of The East India Company v. Clark, said: The settlement likewise contained a provision for the payment of debts; that, according to the modern doctrine, would have made the settlement good against all future creditors. In Holloway v. Millard, (1 Mad. Ch. R., 414,) an attempt was made by a subsequent creditor to overturn a settlement in favor of an illegitimate child, upon the mere ground of its being voluntary, without stating in the bill that the party was indebted. Sir Thomas Plumee said: It is not fraudulent, merely because it is voluntary. Its being voluntary is prima facie evidence, where the party is loaded with debt at the time, of an intent to defeat and defraud his creditors; but if not indebted, his disposition is good. Whittington v. Jennings, (6 Sim. R., 493,) was the case of an assignment at a time when the assignor was indebted to the plaintiff for the balance of an account. That balance was paid off, but new sums became due, and the balance was increased. The assignment was set aside. There was also in the case a continued insolvency, as well as a continuing debt.
Richardson v. Smallwood, (1 Jac. R., 552,) the Master of the Bolls said, he did not recollect an instance of validity being given to a settlement, where the party was largely indebted at the time, and subsequent creditors applied for relief. Being indebted is only one circumstance from which evidence of the intention may be drawn. But suppose a person indebted to execute a settlement void as to creditors at the time, then, if they are paid off, and a new set of creditors stand in their places, does that make any difference ? Is it not void as to them? If it be not so, it would be easy to evade the statute. I do not conceive it necessary to show that the party was insolvent. The question is, whether the court is satisfied that the deed was within the purview of the statute, that it was made to hinder and delay creditors, by placing the property out of their reach. Townsend v. Westacott, (2 Beav., 340,) was a case of large indebtedness at the time of the voluntary *97 conveyance, a debt to the plaintiff himself. The remarks of the Master of the Rolls are valuable as to the question of what shall be the extent of indebtedness which will vitiate a settlement as to present creditors. A customary liability for current expenditures is not enough where means are adequate; and proof of absolute insolvency is not required.
French v. French, (39 Eng. L. and Eq. R., 85,) is to the same point. Lord Oranworth takes the ground, that if the effect- is to withdraw assets immediately available, so as not to leave the party sufficient to pay his creditors, that is clearly a delaying within the act; and this, although he may have reversionary interests which eventually may be applicable for payment of his creditors.
The principal cases in our own courts, before the Revised Statutes of 1830, were Hildreth v. Sands, (2 John. Ch. R., 35 ;) The Manhattan Company v. Osgood, (15 John. R., 162 ;) Reade v. Livingston, (3 John. Ch. R., 481.)
But the doctrine of the Court of Errors in Seward v. Jackson, (8 Cow., 422,) tended to make the question, even, as to existing creditors, one of fact, and not determined merely by-the fact of the deed, when for family purposes, being voluntary. It raised a presumption of fraud, which might be repelled by circumstances.
Then followed the Revised Statutes of 1830. The 4th section of the act, (2 R. S., 127,) declared the question of fraudulent intent was to be deemed a question of fact; that any conveyance or charge shall not be adjudged fraudulent as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration.
The statute is comprehensive, and includes subsequent, as well as prior creditors. Such is .its received construction. (Botts v. Cozine, Hoff. R., 79 ; Carpenter v. Roe, 10 N. Y., 227, cited first.)
King v. Wilcox, (11 Paige, 589,) arose shortly before the statute, and was a case of subsequent creditors. The Chancellor said: Upon a full examination of all the cases, *98 the legal principle appears to be established, that when a voluntary conveyance is made and received with an actual intent to defraud the then existing creditors of the grantor, it is not a Iona fide conveyance which can protect the grantee against the claims of subsequent creditors.
Carpenter v. Roe, (10 N. Y. R., [6 Seld.,] 227,) is an important case on this subject. In February, 1847, Boe, the defendant, purchased a lot of ground, the deed to be executed on the 1st of May next, to his wife. The price of the lot was $10,000; of which Boe paid out of his own funds $2,000, and he and his wife gave mortgages for the balance. The conveyance was made in May, to the wife.
In June, 1847, Boe bought from the plaintiffs some corn, which was delivered on the 15th of that month, and was paid for by a check dated forward on the 24th.
On the 16th of June, he joined his wife in conveying the property to his son-in-law, in trust for his wife, with power to dispose of it by will or deed, and with remainder to her heirs. The deed was voluntary.
At the time of the contract of purchase, in February, he was unembarrassed, and believed himself able to discharge all his debts. In June, though largely indebted, he supposed himself solvent. On the 23d of June the price of grain fell largely, and Boe suspended payment. The check was dishonored, and judgment recovered.
The agreement was considered by the court as not varying the case, even if it had been before the court, which it was not, being set up in an irresponsive answer.
“To avoid the conveyance and trust to and in favor of his wife, it was not necessary that the debtor should be insolvent, or believe himself to be so, when they were executed or created. It was sufficient that he was indebted, and that insolvency would be the inevitable or probable result of want of success in the business in which he was engaged. He could not, legally or honestly, in this manner, provide for himself or family, and cast upon his creditors the hazards of his speculations.”
*99 The deed and the trust were declared void as to the complainants.
A similar rule was declared in Parish v. Murphee, by the Supreme Court of the United States. (13 How., 97.) The plaintiffs were creditors for debts accruing both before and after the voluntary conveyance. The court say, if the facts and circumstances show clearly a fraudulent intent, the conveyance is void against all creditors, past or future. Where a voluntary conveyance is made by an individual free from debt, with a purpose of committing a fraud on future creditors, it is void under the statute. To avoid the settlement, insolvency need not be shown nor presumed; it is enough that when it was made. Goff was engaged in merchandising, principally on credit; and his means consisted of a broken assortment of goods; debts due, scattered all over the country, in small sums; wild lands of little value; a few negroes; and a very limited amount of improved real estate, the value of which was greatly overestimated. The settlement was declared void.
Thus the provision of the Eevised Statutes, making the question of fraudulent intent a question of fact, restores an ancient doctrine of the common law; and its other doctrine is equally in force, that the intent to defraud may exist as to undefined classes of creditors, as well as to a particular individual. Upon these ancient rules is engrafted the principle of later days, that the fraud may exist as to subsequent creditors; also, may be found as a design conceived to avoid payment of subsequently created demands.
In each case, the extent of the party’s debts owing at the time; his situation and the hazards of his trade; the comparative amount of his property; are all matters admissible in evidence, upon the question.
Some conclusions of an important character, and bearing particularly upon the case before us, appear to be justly deducible from the history of the law I have stated. The first inquiry is, were there creditors at the time of the conveyance who could, upon the facts then existing, have *100 succeeded in setting it aside ? If so, has the party continued since that time indebted to others, who could have been equally successful, even if the original creditors had been paid off? And so were there successive creditors at every future period to the time the deed is impeached, as to whom it would have been adjudged void. If this is found to be the case, then I apprehend the subsequent creditor (the grounds of impeaching the instrument remaining unchanged) stands upon an equal footing with a prior creditor. Then there is an indication of the intention originally to make, and subsequently to maintain the deed, in fraud, of the party’s creditors. We are not to forget that the statute of Elizabeth was directed as explicitly to the maintaining, putting in use, and avowing covinous gifts, as to the making them.
In the present case, the party never ceased to be indebted from the date of the conveyances until his insolvency, which took place within a year.
The judgment should be affirmed.
Bosworth, Ch. J.
If the fact found, that the several conveyances by George Murphy were made with intent to defraud his creditors, is sustained by the evidence, and without the erroneous admission or rejection of evidence, then the merits of the case have been correctly decided. There was evidence given tending to establish that fact.
George Murphy, on the 9th of August, 1856, disposed of all his property, except such moneys as he may have had, or may have been owing to him. He left one child wholly unprovided for. He was then in debt, but to what •precise amount the evidence does not disclose. He continued in debt to the time of his failure. As he bought on short credit, existing debts were, from time to time, soon paid, and new ones created. It does not appear that, after conveying his property, he could have paid what .debts he then owed, nor that he could not.
Although the conveyances were immediately recorded, yet there was no visible change of possession. What *101 Mary Murphy did with the rents and other moneys that came to her hands, does not appear.
From the time of the conveyances to the time of George Murphy’s failure, the family lived together as before, and Edward Murphy did not go into business on his account. George Murphy had no consultations with his children before conveying to them.
On the other hand, there is no evidence of any existing debt against George Murphy, contracted prior to the 20th of May, 1857, except perhaps $50, due to Isaac Budlong.
George Murphy testified that he had no thought of failing at that time. He was buying cattle to the extent of $1,500 to $2,000 weekly, from the time of the conveyances to the time of his failure, and seems to have met his engagements promptly up to about the time of his failure. The testimony of Marcus Beach and William Casey tends to show losses in the latter part of his business operations. And it does not affirmatively appear that he received any rents, of or from the property, subsequent to the conveyance thereof.
Besides this, the opinion of the judge at special term, seems to show that he regarded evidence given, not in chief, but to impeach George Murphy, as evidence to the merits. The opinion states, that “one witness swears that he expressly declared that he was apprehensive of losses, and meant to keep the property in his family. It is his intent, proven by declarations and acts, which is to govern the case.”
This statement, whatever it was, was made after his failure, and some ten months after the first conveyances were executed and recorded. The judge had previously excluded, on the defendants’ objection, evidence of George Murphy’s declarations subsequent to the conveyances.
George Murphy was asked by the plaintiff, on cross-examination, whether he made, after his failure, a certain statement to Isaac Budlong, and he said he did not.
*102 Budlong was then recalled, and, with a view to impeach George Murphy’s testimony, was asked if the latter made that statement to him, and the .answer was, “ he did.”
On being’ cross-examined, to ascertain what that statement was, it turned out that George Murphy had not stated any such thing. There was, therefore, no impeachment of his testimony, by proving that he had said, what he swore he did not say. In this cross-examination, Bud-long represents George Murphy as saying “he did not expect, or intend to cheat his creditors; but he was afraid he would lose his property, and wanted to save it for his family; he gave it to his children; he expected to go on with his business and succeed. This was the substance of what he said; I can’t say they were his exact words; I do not think they were.”
If the judge would not have admitted these declarations, as evidence of a fraudulent intent in making the conveyances, then inasmuch as the evidence was parcel of testimony given solely to impeach the testimony of George Murphy, and wholly failed to accomplish that result; but on the contrary tended to disparage the testimony of the impeaching witness more than it did that of Murphy, was it not error to admit it, and weigh it in coming to a final decision, as competent, direct testimony to prove the fact of a fraudulent intent in making the deeds ?
The declarations of a party made after he has conveyed all his interest, are inadmissible as evidence to impeach the title of his grantee. (1 Cow. & Hill’s and Edw. Notes, pp. 313, 318, 320.)
If such evidence, when admissible and admitted for a different purpose, is permitted, under the charge of the judge to be considered by the jury as competent evidence in itself, to impeach the conveyance, is it not error ?
There is an exception, apparently directed to the alleged error of the judge, in considering and giving weight to this evidence in coming to his final conclusion.
On a case, involving the peculiar facts of the present, where it expressly appears that much weight was given to *103 incompetent evidence, and that every exception was taken which possibly could be taken, ought not a new trial to be granted? If, with that evidence excluded, the judge had found no actual intent to defraud, would the court reverse his judgment?
In finding an intention to defraud, he has been strongly influenced by evidence incompetent for such a purpose; the admission of the evidence was excepted to, and the decision of the court, in making this application of the evidence, was also excepted to; under such circumstances, and considering the evidence affecting the merits, I think the defendants should have a new trial, if not as a matter of right, at least upon terms. But my brethren being of opinion that the judgment should be affirmed, it will be so ordered.
Judgment affirmed.