FREDERIC M. LAUGHTON vs. CUSHMAN E. HARDEN.

Penobscot.    Decided May 27, 1878.

*Fraudulent conveyance. Equity practice.*

Where a creditor levies upon the real estate which his debtor has conveyed to another in fraud of creditors, and then seeks by a bill in equity to obtain from the grantee a release of his title to the premises levied upon, the debtor need not be made a party to the bill. To so much of the bill as may directly affect real estate fraudulently conveyed by the debtor and not levied upon by the creditor, the debtor would be a necessary and indispensable party.

It is a well nigh universal rule in equity, that, if any part of a bill is good and entitles the complainant to relief, a demurrer to the whole bill cannot be sustained.

Where the want of parties to a bill in equity is merely a formal defect, the demurrer must be special, to reach the defect. But where the interests of the omitted parties are such as to be directly affected by granting the relief sought for, the objection may be taken upon general as well as special demurrer, or at the hearing of the arguments, or even when the decree is to be made; and the objection may be started by the court itself, in its caution, whenever the necessities of the case require it.

A voluntary conveyance from father to son, made by the grantor with an intent to defraud his subsequent creditors, is void as to such creditors, without either allegation or proof that the grantee participated in that intent when he received or accepted the deed. In such case the intent of the grantor alone determines the validity of the conveyance.

ON DEMURRER to a bill in equity.

*E. Hale & L. A. Emery*, for the defendant.

*F. M. Laughton*, *pro se.*

PETERS, J.   The bill alleges that Eben Harden, owning certain parcels of land, conveyed them to his son, Cushman E. Harden, to defraud his creditors ; that the complainant obtained an execution against the grantor, and levied it upon a portion of the land so conveyed ; and the complainant prays that the title to the land levied upon shall be released to him by the grantee.   The bill is met by a general demurrer.

The first point taken on the demurrer is, that Eben Harden, the grantor, should have been made a defendant to the bill.   He is no party to it.   This objection must be overruled.   Eben

Harden no longer has any interest in the land taken from him by the levy. His grantee is the legal and the complainant is the equitable owner thereof. He is in the position of an assignor whose assignment is absolute and unconditional. This is well settled. *Haskell* v. *Hilton*, 30 Maine, 419. *Miller* v. *Whittier*, 32 Maine, 203. *Moor* v. *Veazie*, Id. 343. *Brown* v. *Johnson*, 53 Maine, 246. The following cases by their force and effect, completely cover this point raised in the case at bar. *Smith* v. *Orton*, 21 How. 241. *Whitmore* v. *Woodward*, 28 Maine, 392. *Dockray* v. *Mason*, 48 Maine, 178. *Richards* v. *Pierce*, 52 Maine, 560. The same cases decide that the grantor could properly have been joined, but that it was not necessary to join him. If joined, the bill would not have been dismissed on that account. To this portion of the bill, therefore, demurrer does not lie for want of parties. To another part of the bill, standing alone, demurrer would lie. Besides the relief prayed for, as already named, the complainant asks relief also in respect to the portion of the land not levied upon, claiming certain rights thereto as merely an attaching creditor. As to this portion of the bill, Eben Harden, the grantor, would be a necessary and indispensable party. He is interested in the result. He is the equitable owner of the land not levied upon. This is clearly shown by the cases cited and many others. *Lawrence* v. *Bank of the Republic*, 35 N. Y. 320. *Beardsley Scythe Co.* v. *Foster*, 36 N. Y. 561.

The complainant contends that the demurrer would reach no part of the bill, because it is general and not special, insisting that a demurrer is not good unless it specify the parties omitted and the names of such parties. This depends upon whether the want of parties is merely a formal defect or not. To all mere formal defects the demurrer must be special. It is true, the authors on equitable proceedings say that the demurrer should supply the names of the persons omitted, and such would be the better practice. But where the parties left out are so inseparably connected with the subject of the suit that a decree could not be made without directly affecting their interests, the objection to the bill may be taken upon general as well as special demurrer, or at the hearing of the arguments, or even when the decree is to be made; and

the objection may be started by the court itself, in its caution, whenever the necessities of the case seem to require an objection to be interposed. *Haughton* v. *Davis*, 23 Maine, 28, 34. *Brown* v. *Johnson*, *ubi*, *supra*. *Sears* v. *Hardy*, 120 Mass. 524. Story Eq. Pl. §§ 26, 153, 236, and notes.

It is a well nigh universal rule in equity, that, if any part of a bill is good and entitles the complainant to relief, a demurrer to the whole bill cannot be sustained. The proper part of the bill can be acted upon independently of that which is faulty. The bill therefore may be maintained, notwithstanding this objection.

Another objection by the respondent is, that the bill is defective because it is no where alleged therein that he (the grantee) participated in the fraudulent intent of the grantor in conveying the land. No doubt, it should in some sufficient form be alleged if it must be proved. We feel sure that the fact need be neither alleged nor proved in the case of a voluntary conveyance, as this is. The bill alleges that the conveyance was made without valuable consideration; that the grantor, at the time of the conveyance, was in debt and insolvent; that he has been in debt ever since; that he has exercised acts of ownership over the property since the conveyance; that his object in making the conveyance was to delay, hinder and defraud his creditors; that the complainant became a creditor after the conveyance, and that the conveyance is void as to the claim of the complainant. This is allegation enough, if the facts alleged be proved.

The exact question presented is this : Is a voluntary conveyance from father to son, made by the grantor with an intent to defraud subsequent creditors, void as to such creditors, when there is no proof that the grantee participated in that intent when he received or accepted the deed ? The statute of Elizabeth, c. 5, answers the question in the affirmative. It pronounces every conveyance, made to hinder, delay or defraud creditors, utterly void as against such creditors, unless the estate shall be " upon good consideration, and *bona fide*, lawfully, conveyed to such person," not having at the time " any manner of notice " of such fraud. Can it be said that this estate was *bona fide*, " lawfully " conveyed, or that a grantee who pays no consideration for land fraudulently conveyed

to him has "no manner of notice" of the fraud? But this is not all of the statute. It threatens a penalty against a party to such a conveyance who, being privy and knowing thereto, "shall wittingly and willingly put in use, avow, maintain, justify and defend the same" as true and *bona fide* and upon good consideration." When a grantee in such a deed becomes informed of the grantor's intent, does he not assist in executing that intent by an endeavor to uphold and maintain the deed? Is he not in the eye of the law presumed to be a participator in the fraud? Should not an honest grantee repudiate the deed? The grantee by the fraudulent act of his grantor becomes the trustee or depositary of property which belongs to the grantor's creditors. By attempting to withhold it from the creditors, does not the grantee himself commit a fraud? If innocent in the beginning, does he not become guilty in the end? The governing and acting intent was the grantor's. Does not the grantee endeavor to avail himself of it and adopt it when he holds on to the deed? No other conclusion can be reached. Of course, it will not at this day be questioned that any conveyance may be avoided by subsequent as well as by prior creditors, if fraud was by such conveyance meditated against subsequent creditors. *Wyman* v. *Brown*, 50 Maine, 139. *Bailey* v. *Bailey*, 61 Maine, 361.

Any other view of this question than the one taken by us would permit and encourage most iniquitous frauds upon the part of badly disposed debtors. A man might convey all his property to his wife or minor children upon the eve of an expected bankruptcy, and, on account of his undoubted credit and apparent possession of means and property, be enabled to create a very great amount of subsequent indebtedness. How could a creditor show that the wife, and *a fortiori* that the young minor children knew of the grantor's fraud, unless the knowledge can be imputed to them under such circumstances as a necessary implication of law? It would be unnatural for a debtor's wife and children to believe him to be a dishonest man, and uncommon for them to know much of his business affairs.

It is said sometimes, that a voluntary conveyancy may be good against subsequent and not good against existing creditors. Why?

Merely because the conveyance may operate, or be intended, to defraud the one kind of creditors and not the other. It is void only according as it is fraudulent. If it is fraudulent as against a particular creditor, then as against that creditor it is void. The statute of Elizabeth, referred to, makes no mention of voluntary conveyances nor distinguishes between classes of creditors. Its penalties are aimed against any and all fraudulent conveyances. There is no distinction between a conveyance that is fraudulent in law and one that is fraudulent in fact, so far as their operation in civil suits is concerned. No doubt, a voluntary conveyance is more likely to be fraudulent as against prior creditors, but not always so. See *Bailey* v. *Bailey, supra.* 'A conveyance, whether fraudulent in law or in fact, is after all no more nor less than a fraudulent conveyance. The only difference is in the mode and extent of proof required to substantiate the one or the other. Certain facts may be sufficient to prove the one and not the other. A voluntary conveyance is not *per se* evidence of fraud against even a prior creditor, but *prima facie* only. *French* v. *Holmes,* 67 Maine, 186. As to subsequent creditors it is a fact only, which with other facts and circumstances may prove the fraud as to them. In the one case, the voluntary conveyance is not good, unless the debtor has ample means left after the gift wherewith to pay his existing indebtedness without risk or hazard to his creditors. In the other case, it may not be good, if the debtor is at the time insolvent or deeply indebted and pays off his old debts by contracting new ones. In the one case, the burden is upon the grantee to show that the deed was not fraudulent. In the other case, the burden is upon the subsequent creditors to show that it was.

After considerable research, we find no case that decides such proof to be necessary. Language may be found (in cases) having such a leaning, but not where the facts were as they are here. It must be remembered that the doctrine making any conveyance fraudulent as to subsequent creditors is comparatively new in this country. It was regarded as somewhat a doubtful question in Massachusetts as late as *Damon* v. *Bryant,* 2 Pick. 411. It would be in vain, we presume, to search for such a thing in the

English cases, as it is held in the English courts that the intent of a grantor in a voluntary conveyance is so conclusively the governing intent between the parties, that the grantor may himself control and cancel the conveyance by an after conveyance of the same land to a subsequent purchaser for a valuable consideration, although such purchaser has notice of the prior deed. The doctrine to this extent is not admitted in this country in many courts, if at all. See *Beal* v. *Warren*, 2 Gray, 447. The American cases are many in which it has been assumed that proof of a fraudulent intent on the part of the grantee in a voluntary conveyance was not necessary. In many others it has been so directly held.

The leading case in this country on the effect of a voluntary conveyance upon the rights of subsequent creditors is *Sexton* v· *Wheaton*, 8 Wheat. 229. The court there place stress only upon the intent of the grantor. *Mattingly* v. *Nye*, 8 Wall. 370, sustains the same doctrine. *Parish* v. *Murphree*, 13 How. 92, is to the same effect. In *Hitchcock* v. *Kiely*, 41 Conn. 611, it was decided that " a voluntary conveyance, fraudulent in fact, will be set aside in favor of creditors, whether the grantee participated in the fraud or not." In that case, the contending party was a creditor subsequent to the conveyance. In *Beecher* v. *Clark*, 12 Blatch. 256, a voluntary conveyance was set aside for the benefit of both prior and subsequent creditors. Hunt, J., says : " I cannot assent to the proposition, that it is necessary that the grantee should have known that the intent of the grantor was fraudulent, and that she should have been an intentional party to the fraud. The fact that a wife received a voluntary conveyance of the same, in ignorance of these facts, (showing fraud in fact) will not make the conveyance a valid one." *Savage* v. *Murphy*, 8 Bosw. 75, contains a learned and lengthy review by Hoffman, J., of the earlier decisions by which subsequent purchasers and creditors were permitted to question conveyances as being fraudulent against them, and this proposition is there laid down : " Where a deed is made to defraud creditors, by one at the time in debt, and who subsequently continued to be indebted, it is fraudulent and void, as to all such subsequent, as well as existing creditors." See,

also, *Carpenter* v. *Roe*, 10 N. Y. 227. In *Mohawk Bank* v. *Atwater*, 2 Paige, 54, Chancellor Walworth says : "It is of no consequence in this suit whether the son knew of the extent of his father's indebtedness or not. The grantee without valuable consideration cannot be protected, although he was not privy to the fraud." In *Carter* v. *Grimshaw*, 49 N. H. 100, the intent of minor children upon whom a settlement was made was considered of no consequence at all. *Coolidge* v. *Melvin*, 42 N. H. 510, 534, sustains the same view. In *Savage* v. *Murphy*, 34 N. Y. 508, the same idea is strongly presented by the court. Among other things said about the rights of subsequent creditors against a voluntary deed, this is added : " The indebtedness then existing was merely transferred, not paid, and the fraud is as palpable as it would be if the debts now unpaid were owing to the same creditors who held them at the time of the transfers." In 13 Allen, 257, 260, (*Clark* v. *Chamberlain*) Hoar, J., remarks : "Where the purpose of the grantor is shown to have been actually fraudulent as to creditors, it is sufficient to prove that the grantee takes without consideration, without proving otherwise his participation in the fraudulent intent." *Lee* v. *Figg*, 37 Cal. 328, concludes an opinion thus : " It ( allegation ) avers that the conveyance to Ogden was without consideration, and this is sufficient to avoid it as to creditors of Lee, (grantor) whether Ogden was aware of the fraudulent purpose of Lee and actively aided it or not." *Lassiter* v. *Davis*, 64 N. C. 498, decides that "a voluntary gift is void, if it was the maker's intent to hinder, delay or defraud creditors, whether the party who takes the gift participated in the fraudulent intent or not." In *Foley* v. *Bitter*, 34 Md. 646, it was held to the same effect, and it is there said : " The innocence of the trustee, or of the creditors named in the deed, will not save it (an assignment) from condemnation under the statute (of Elizabeth) if fraudulent in fact on the part of the grantor." Bump, in his work on Fraudulent Conveyances, makes the following observations : " There is no difference in principle between fraud in fact and fraud in law." " The inquiry is as to the intention of the debtor." P. 71. "An inquiry into the good faith of the grantee is only necessary when there is a valuable consideration for the

transfer." P. 229. " It follows, from the definition of a voluntary conveyance, that the question in regard to its validity or invalidity depends on the intent of the party making it, and not on the motive with which it is received. The proviso at the end of the statute (of Elizabeth) only extends to transfers made upon good consideration, and it has long been settled that the only consideration which is good, within the meaning of the statute, is a valuable consideration." " The only question is *quo animo* the gift or grant is made. It is the motive of the giver, and not the knowledge of the acceptor, that is to determine the validity of the transfer. A donee who sets up a voluntary conveyance, when it would, if established, defeat creditors, participates in and carries out the intent of the donor." PP. 279, 280. See *Tucker* v. *Andrews*, 13 Maine, 124.

*Demurrer overruled.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.